THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC GILBERT,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NORDSTROM, INC.; NAVY ACQUISITION CO., INC.; NORSE HOLDINGS, INC.; ERIK B. NORDSTROM; PETER E. NORDSTROM; JAMES L. DONALD; KIRSTEN A. GREEN; GLENDA G. MCNEAL; AMIE THUENER O'TOOLE; GUY B. PERSAUD; ERIC D. SPRUNK; BRADLEY D. TILDEN; MARK J. TRITTON; ATTICUS N. TYSEN; EL PUERTO DE LIVERPOOL S.A.B. DE C.V.,<br><br>　　　　　　Defendants. | No. C25-0568JHC<br><br>NORDSTROM, INC. AND THE INDEPENDENT DIRECTORS' OPPOSITION TO PLAINTIFF'S EX PARTE MOTION<br><br>Noted for Motion:  April 10, 2025 |

Nordstrom, Inc. ("Nordstrom" or the "Company") and its Independent Directors oppose Plaintiff's Ex Parte Motion To Expedite (the "Ex Parte Motion").[1] Nordstrom and its Independent Directors further request that the Court enter the schedule proposed below, which permits resolution of Plaintiff's novel and unfiled injunctive claim before a May 16, 2025 shareholder vote on a pending $6.25 billion acquisition of the Company (the "Transaction").

---

[1] The Independent Directors are the individual director defendants Plaintiff names, except for Erik and Peter Nordstrom (the "Nordstrom Brothers").

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  Plaintiff's claim depends on a novel reading and incorrect application of Washington's Anti-
2  Takeover Statute, RCW 23B.19 (the "Anti-Takeover Statute").

## I. INTRODUCTION

Plaintiff filed the Complaint on March 31, 2025, alleging that the Transaction violates the Anti-Takeover Statute and is unfair to shareholders. Four days later, and before he had served all Defendants, Plaintiff moved to expedite discovery, noting his Ex Parte Motion on the Court's calendar for the same day he filed it. Plaintiff proposed that Defendants respond to the Ex Parte Motion in two business days and produce discovery 10 days after the Court rules on the motion. The parties have not yet held—and are not yet required to hold—a Rule 26(f) conference. Plaintiff purports to need discovery to support a motion for preliminary injunction, but has not filed one.

The Court should deny the Ex Parte Motion for multiple reasons. At the outset, the motion is procedurally invalid. It violates Local Civil Rule 7(d), which sets contested motions on a 21-day schedule.

Plaintiff's demand for expedited discovery is also substantively improper. This Court permits expedited discovery in narrow circumstances—for example, when a plaintiff needs discovery to identify Doe defendants. There is no basis for expedited discovery in support of an unfiled preliminary injunction here. Plaintiff has already received a production of confidential minutes of Nordstrom's Board of Directors (the "Board") and an independent Special Committee thereof (the "Special Committee") in response to a demand under Washington's books and records statute, RCW 23B.16.020. Also available to Plaintiff are (1) a preliminary proxy statement that includes an exceptionally detailed description of the Transaction and the events leading up to it, and (2) financial presentations made to the Board and Special Committee in connection with the Transaction, which Nordstrom filed with the SEC under Schedule 13E-3. If Plaintiff wishes to pursue a preliminary injunction, he should move for one, and the parties can brief the motion promptly. But no circumstance justifies what Plaintiff proposes: that

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  Defendants bear the burden of lightning-speed, expansive discovery in order to provide Plaintiff
2  with facts he hopes may support injunctive relief.  Plaintiff could easily have filed his Complaint
3  earlier.  Plaintiff is responsible for the timing crisis from which he asks the Court to rescue him.
4      If and when Plaintiff moves for an injunction, the Court will be presented primarily with
5  a legal issue.  Washington's legislature enacted the Anti-Takeover Statute to protect businesses
6  important to the local economy from "hostile or unfriendly" sneak attacks by corporate raiders.
7  RCW 23B.19.010.  No court has applied the statute.  By its terms, the Anti-Takeover Statute
8  does not apply to transactions initiated and supervised by a corporation's own board of
9  directors—which was indisputably the case here.  Delaware courts, to which Plaintiff asks this
10 Court to look for guidance, have roundly rejected pleading-stage requests to enjoin board-driven
11 transactions under Delaware's anti-takeover statute (which is similar to Washington's).
12     This Court should do the same.  The Transaction is plainly not a hostile takeover.  It is an
13 acquisition by Nordstrom's founding family.  The Special Committee negotiated the Transaction
14 and the Board approved it.  The Board also approved the formation of a group of buyers for
15 purposes of pursuing the Transaction (the "Buying Group").  The Transaction is subject to
16 approval by a majority of Nordstrom's unaffiliated shareholders; the shareholder vote is
17 scheduled for May 16.  Perhaps most significantly, those shareholders will receive a 42%
18 premium over the price at which Nordstrom's stock traded before word of a possible deal
19 became public.  This Court should be wary of Plaintiff's attempt to block the Transaction,
20 particularly at a time of historic disruption in the stock market generally and material decline in
21 department store stocks in particular.
22     At the same time, Plaintiff has injected uncertainty about the Transaction by threatening
23 to move for injunctive relief.  A ruling before the shareholder vote on the Transaction is
24 important for *all* parties.  Nordstrom and its Independent Directors therefore respectfully request
25 that the Court (1) deny Plaintiff's improper request for expedited discovery, and (2) set the
26

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

following schedule should Plaintiff decide to press forward with a motion for preliminary injunction ("PI Motion"):

 (i)  April 11, 2025:  Plaintiff to file PI Motion;

 (ii)  April 25, 2025:  Defendants to respond;

 (iii)  April 28, 2025, noon:  Plaintiff to reply;

 (iv)  Week of April 28, 2025:  Hearing, if the Court wishes to hold one; and

 (v)  60 days after the Court rules on PI Motion:  Defendants to answer or move to dismiss the Complaint.

## II. BACKGROUND

**A. The Nordstrom Board Forms a Special Committee to Oversee a Potential Transaction, Including a Potential Bid by the Nordstrom Family**

In 2023, the Board discussed strategic alternatives.  ¶ 39.[2]  In late 2023 and early 2024, Nordstrom invited bidders to consider a potential transaction, and entered into non-disclosure agreements with seven invitees, including El Puerto de Liverpool, S.A.B. de C.V. ("Liverpool").  ¶ 47.  In February 2024, the Nordstrom Brothers told the Board that they were interested in exploring a potential take-private transaction, and believed that other family members and Liverpool might be too.  ¶ 50.  The Nordstrom Brothers would commit to any transaction they participated in being conditioned on (1) approval by a special committee, and (2) the affirmative vote of a majority of disinterested shareholders.  ¶ 52.  In response, later in February 2024, the Board formed the Special Committee, consisting of three disinterested and independent directors.  ¶¶ 54-55.

Over the ensuing months, the Special Committee engaged repeatedly with the Nordstrom family and the potential bidders.  *E.g.*, ¶¶ 69-104.  The Special Committee instituted procedures

---

[2] "¶ _" citations refer to the Verified Stockholder Class Action Complaint.

NORDSTROM, INC. AND INDEPENDENT DIRECTORS' OPPOSITION TO PLAINTIFF'S EX PARTE MOTION (NO. C25-0568JHC) – 4

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

regarding communications with bidders and established a timeline for proposals.[3] The Special Committee was aware of the Anti-Takeover Statute and affirmatively sought to ensure it would not apply to a deal the Company chose to pursue. Among these efforts, as Plaintiff highlights: On September 3, 2024, the Board formally approved by unanimous written consent the formation of a group among the Nordstrom family and Liverpool in connection with a potential transaction. ¶¶ 85, 105.

**B.     The Transaction**

On December 22, 2024, Nordstrom entered into a definitive agreement under which members of the Nordstrom family and Liverpool would acquire all outstanding common shares of Nordstrom they did not yet beneficially own.[4] The Transaction's purchase price of $24.25 per share represents a 42% premium over the closing price on March 18, 2024, when news media began covering a potential transaction.[5]

**C.     Plaintiff Seeks and Receives Corporate Books and Records About an Alleged Anti-Takeover Statute Violation; Nordstrom Files Its Proxy**

Plaintiff owns a miniscule fraction of Nordstrom's stock—less than 0.0001%. On January 9, 2025, Plaintiff demanded an inspection of Nordstrom's corporate books and records in order to investigate a purported violation of the Anti-Takeover Statute. In his demand letter (the "January 9 Letter"), Plaintiff contended, based on public information, that the Transaction "cannot be completed unless it is approved by two-thirds of all votes excluding those of Liverpool and the Nordstrom Family."[6]

---

[3] Nordstrom, Inc., Schedule 14A (Mar. 4, 2024) (the "Proxy") at 40, available at https://www.sec.gov/Archives/edgar/data/72333/000121390025019772/ea0231675-01.htm.

[4] *Id.* at 1.

[5] *Id.* at 18, 136.

[6] Declaration of Sean Knowles, Ex. A at 10-11.

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 5

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

On February 28, 2025, Nordstrom produced books and records to Plaintiff, largely consisting of confidential Board and Special Committee minutes related to the Transaction.[7]

On March 4, 2025, Nordstrom filed its preliminary proxy statement, which includes a highly detailed description of the events leading to the Transaction (the Proxy). Among other things, the Proxy chronicles the Board's (or the Special Committee's) oversight of the deal process from beginning to end, including approval of the formation of the Buying Group.

**D.   Plaintiff Waits Weeks to File a Complaint and an Invalid Ex Parte Motion, but No Preliminary Injunction Motion**

With a wealth of information on hand, Plaintiff waited until Monday, March 31, 2025 to file his Complaint. The Complaint draws on Plaintiff's own January 9 Letter, which was sourced from public materials. Plaintiff supplements the allegations in the letter with facts he obtained from his books and records demand and Nordstrom's Proxy filing.

On Wednesday, April 2, 2025, Plaintiff emailed procedurally improper discovery requests to Nordstrom, the Nordstrom Brothers, and Liverpool (which Plaintiff has to date not served). In violation of Rule 26(f), Plaintiff sent these requests before the parties had held (or were required to hold) a discovery conference. In contravention of Rules 33 and 34, Plaintiff demanded responses within 10 days. Having consumed weeks if not months converting the January 9 Letter into the Complaint, Plaintiff demanded that Defendants respond at breakneck speed to discovery he is not yet entitled to propound.

On Thursday, April 3, 2025, Nordstrom's counsel told Plaintiff that the Company anticipates holding the shareholder vote in May 2025, and asked Plaintiff to make a proposal geared to obtaining a ruling on Plaintiff's purported Anti-Takeover Statute claim before the vote. Dkt. 24-1 at 4.

---

[7] The February 28 production totaled 178 pages. A subsequent March 14 production totaled 51 pages. Knowles Decl. ¶ 2.

NORDSTROM, INC. AND INDEPENDENT DIRECTORS' OPPOSITION TO PLAINTIFF'S EX PARTE MOTION (NO. C25-0568JHC) – 6

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

On Friday, April 4, 2025, at 11:43 a.m., Plaintiff emailed a revised discovery proposal and asked Nordstrom to join a call to the Court. *Id.* at 2.  At 2:37 p.m., counsel for Nordstrom responded to (1) reiterate that Plaintiff's discovery requests were improper, (2) note that Plaintiff had yet to move for a preliminary injunction, and (3) request that Plaintiff serve updated discovery requests reflecting his revised proposal, and then meet and confer on Monday or Tuesday (April 7 or 8, 2025).  *Id.*

Rather than responding, Plaintiff filed the Ex Parte Motion that afternoon.  On April 8, the Court issued an order directing Defendants to respond to the motion by April 9 and Plaintiff to reply by April 10.  Only after the Court issued its order did Plaintiff indicate a willingness to meet and confer. Counsel for Nordstrom has responded.  But with Plaintiff's Ex Parte Motion on file and a highly compressed briefing schedule set by the Court to resolve that motion, the time for a constructive conference between the parties about issues of scope has passed.

### III.   ARGUMENT

**A.   Plaintiff's Ex Parte Motion Is Procedurally Improper**

Plaintiff's ex parte filing is improper.  Plaintiff recognizes that his motion will be opposed:  He proposes that Defendants file their oppositions to the motion by April 8. Dkt. 23 at 2.  Noting a contested discovery motion as a same-day motion is alien to the Western District Local Rules.  Opposed motions are 21-day motions under Local Civil Rule 7(d)(3).  *E.g.*, *Beagle v. Amazon.Com, Inc.*, 2024 WL 4134738, at *1 (W.D. Wash. Sept. 10, 2024).[8]

**B.   The Transaction Does Not Violate the Anti-Takeover Statute**

In order to evaluate Plaintiff's contention that he is entitled to expedited discovery, it is helpful to understand the nature of Plaintiff's flawed claim that the Transaction violates the Anti-Takeover Statute.

---

[8] The 4,200-word limit for contested motions under Local Rule 7(e)(4) should apply to the current brief, rather than the 2,100-word limit applicable to true same-day-motions under Rule 7(e)(1), to which no response is contemplated.

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

In 1987, Washington's legislature enacted the Anti-Takeover Statute. Like other states adopting similar provisions, Washington enacted the statute against the background of corporate raiders taking over local businesses and stripping them for parts. Washington did so amidst rumors that one such notorious raider was accumulating Boeing stock.[9] The Anti-Takeover Statute reflects the legislature's concern that, among other things, "[h]ostile or unfriendly attempts to gain control of or influence otherwise publicly held corporations can harm the economy of the state by weakening corporate performance, and causing unemployment, plant closings, [and] reduced charitable donations." RCW 23B.19.010(6).

The Anti-Takeover statute was designed to protect corporations and their shareholders from sneak attacks. It does so by prohibiting transactions with an "acquiring person"—a shareholder or shareholder group that has accumulated 10% or more of a company's stock—under certain circumstances. The Anti-Takeover Statute ensures early board involvement by exempting transactions with an "acquiring person" that are "approved" by a board majority before that person's "share acquisition time." RCW 23B.19.040. Absent board approval, a five-year moratorium applies, unless the transaction is approved by a two-thirds majority of unaffiliated shareholders.

Plaintiff twists these statutory definitions and concepts to improperly target Nordstrom's Board-driven negotiations with the Nordstrom family and Liverpool. That is not remotely consonant with the legislature's stated findings and intent. *E.g.*, RCW 23B.19.010 (reflecting legislature's concern with "[h]ostile or unfriendly attempts to gain control").

No court has applied Washington's Anti-Takeover Statute. But Delaware courts, to which Plaintiff encourages this Court to look for guidance (Dkt. 23 at 3 n.4), have soundly rejected claims targeting consensual transactions overseen by a company's board. The Court of Chancery's discussion in a recent pleading-stage decision is typical:

---

[9] Maureen B. Callahan & David J. Burman, *The Validity of Washington's Antitakeover Act Under the Commerce and Supremacy Clauses*, 13 SEATTLE U. L. REV. 41 (1989).

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 8

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

> Plaintiff's view of [Delaware's anti-takeover statute] would authorize the court to prevent a merger even when a target's board was aware of, and did not object to, a buyer's attempt to secure the endorsement of a significant stockholder in favor of a deal that the board itself was attempting to secure for all of the target's stockholders. Even if Plaintiff is correct that the Board had not formally approved of either the Merger or Voting Agreement prior to July 26, and that there was a meeting of the minds between the Baker Brothers Entities and Exact with respect to voting on July 26, it is undeniable that the Merger was formally approved by the Board on July 28 (with full knowledge of the Voting Agreement negotiations) and endorsed by the Board much earlier than that. Nothing about this dynamic suggests Exact was engaged in "abusive takeover tactics." Because this court should be hesitant to strain the statute's language to cover situations that do not threaten the interests the statute was designed to protect, Plaintiff's [statutory] claim must be dismissed.

*Flannery v. Genomic Health, Inc.*, 2021 WL 3615540, at *10 (Del. Ch. Aug. 16, 2021) (cleaned up). These principles are so obvious that Delaware courts have concluded that anti-takeover statute claims challenging board-driven processes are not even "colorable"—the low standard Delaware courts apply in determining whether plaintiffs challenging deals are entitled to expedited discovery and injunction proceedings. *Apollo Mamakas v. Iconix Grand Grp., Inc.*, C.A. No. 2021-0632-KSJM (Del. Ch. July 26, 2021) (transcript ruling) at 12 (Knowles Decl., Ex. B) (statute was "adopted to discourage hostile takeovers" and "channel potential acquirers to negotiate with the board").

In this case, as in *Genomic*, the Transaction was driven and overseen by the Board. The Board began considering strategic alternatives in 2023, solicited interest from many potential bidders, and formed the Special Committee in response to the Nordstrom Brothers' expression of interest. *Supra* at 4. The Special Committee presided over months of engagements with potential bidders—including the Nordstrom family and Liverpool—and set a schedule for bids. *Id.* at 4-5. On September 3, 2024, the Board expressly waived any application of the Anti-Takeover Statute to the Nordstrom family and Liverpool, ¶ 105, thereby providing the pertinent statutory approval before the parties agreed to the Transaction in December 2024.

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 9

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

The process leading to the Transaction is the antithesis of the hostile takeover tactics that the Anti-Takeover Statute was enacted to prevent. The Special Committee's and Board's involvement and ultimate approval of the Transaction are fatal to Plaintiff's claim.

### C. Plaintiff Is Not Entitled to Expedited Discovery

Expedited discovery—before a Rule 26(f) conference—is the exception under the Federal Rules of Civil Procedure. This Court applies a five-factor test to determine whether expedition is appropriate: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Fluke Elec. Corp. v. CorDEX Instruments, Inc.*, 2013 WL 566949, at *10 (W.D. Wash. Feb. 13, 2013) (cleaned up); *see also* Dkt. 23 at 4 (Plaintiff cites the same factors). Plaintiff cannot satisfy any factor. On the last two, Plaintiff does not even try.

#### 1. Whether a preliminary injunction is pending

No preliminary injunction motion is pending. Plaintiff argues that this is unimportant because he is *considering* such a motion. Dkt. 23 at 4 (citing decisions from district courts in California). But the law in this District is contrary. *Fluke*, 2013 WL 566949, at *11 (factor not satisfied where plaintiff had not moved for preliminary injunction).

Expedited discovery in the absence of a pending preliminary injunction motion is appropriate only in narrow circumstances. For example, this Court has permitted expedited discovery to plaintiffs seeking to identify Doe defendants—while denying it for any other purpose. *E.g.*, *Lee v. Does #1-3*, 2024 WL 472375, at *1 (W.D. Wash. Jan. 10, 2024).

No circumstances justify expedition here. Because Plaintiff has made a books and records demand, he already has confidential Company documents that would otherwise be the subject of discovery. Nordstrom has also set forth copious detail about the Transaction and the events leading up to it in the March 4 Proxy. The Proxy's "Background of the Merger" section spans almost 30 single-spaced pages, and contains in many instances a day-by-day account of the

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 10

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

activities of the Board, the Special Committee, and the bidders. In addition, Nordstrom has publicly disclosed presentations made by financial advisers. And on January 9, even before any of this was available, Plaintiff told the Company he believed he had sufficient information to conclude that Defendants had violated the Anti-Takeover Statute. *Supra* at 5.

By contrast, in the three cases Plaintiff cites, no books and records had been produced and there was no indication that the party seeking expedited discovery had access to the kind of information available here. Dkt. 23 at 4. In the first case, a trademark infringement action, the court stated that "good cause [for expedited discovery] is frequently found in cases involving claims of infringement and unfair competition." *Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 1938154, at *2 (N.D. Cal. May 18, 2011). The second, a trade secrets action, is similar. *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, 2010 WL 143665 (N.D. Cal. Jan. 7, 2010) (cited in *Apple*). In the third, the *defendant* sought expedition because allegations in the complaint suggested that plaintiff had waived attorney-client privilege. *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2014 WL 1255242, at *1 (S.D. Cal. Nov. 7, 2014). Unlike the parties in those cases, Plaintiff is already sitting on a wealth of information.

### 2. Breadth of the requests

Plaintiff suggests his discovery is "narrowly tailored." It is not. Plaintiff's requests are few in number—three interrogatories and five document requests—but they cover the waterfront. Plaintiff seeks, among other things, "all documents and communications" between the Transaction parties and their advisers "relating to the Merger." Dkt. 24-2 at 11.

Plaintiff says he has narrowed discovery by dropping one interrogatory and one document request, by limiting the relevant period to June 1, 2024 through September 11, 2024, and by limiting the requests to "all documents and communications" that are "related to" "the Anti-Takeover Statute" and "the September 3 Proposal" (*i.e.*, the proposal that culminated in the Transaction). Dkt. 23 at 4-5; Dkt. 24-1 at 2. According to Plaintiff, responses to this discovery will enable him to "confirm[] that members of the Nordstrom Family and Liverpool reached an

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 11

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

'agreement, arrangement, or understanding' prior to Board approval on September 3, 2024."
Dkt. 23 at 4-5. But as Plaintiff himself explains, that is the whole ball game—the entirety of his claim under the Anti-Takeover Statute. *Id.* at 3. And it still amounts to a massive discovery burden in 10 days.[10]

### 3. Purpose for expedited discovery

Citing Delaware law, Plaintiff contends that this factor weighs in his favor because shareholder voting rights are "sacrosanct." Dkt. 23 at 5. But as discussed, Delaware courts reject claims like Plaintiff's—claims for violations of an anti-takeover statute where the challenged process was managed by the board. In *Genomic*, the court granted the company's motion to dismiss based on public documents and the company's books and records; there was no discovery. 2021 WL 3615540, at *1 & *2 n.5. In *Iconix*, the court held that plaintiff's claim was not even colorable, and denied a motion to expedite on that basis. Knowles Decl., Ex. B at 12. Delaware law in no way aids Plaintiff.

### 4. Burden on Defendants

Plaintiff does not address the burden he seeks to impose on Defendants. He refers instead to what he calls the "irreparable harm faced by the public stockholders if the $6.25 billion Merger is approved in violation of Washington's statutory requirements." Dkt. 23 at 5. Purported harm is not relevant under the fourth factor, but even if it were, Plaintiff's argument is exactly backwards: $6.25 billion reflects the enterprise value of the Transaction. The Company's shareholders will receive their pro rata share of that premium offer if the Transaction is consummated. By seeking to derail the Transaction, *Plaintiff* threatens harm to the very

---

[10] Plaintiff's authorities are again inapposite. In *Hardie v. NCAA*, a preliminary injunction was pending; the court still found several of plaintiff's requests overbroad. 2013 WL 1399333, at *1-2 (S.D. Cal. Apr. 5, 2013). *NobelBiz, Inc. v. Wesson* is another trade secrets case, *see supra* at 11, in which the court denied the motion to expedite outright as to several of plaintiff's requests and narrowed others. 2014 WL 1588715, at *2-3 (S.D. Cal. Apr. 18, 2014). In neither case did the plaintiff have access to the copious information available to Plaintiff here.

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 12

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

shareholders he purports to represent, who would lose a premium payment at a time of historic stock market disruption.

As for the discovery burden on Defendants, it is plainly substantial. Plaintiff's purportedly limited request for "all documents and communications" "relating to" the September 3, 2024 bid or the Anti-Takeover Statute encompasses all documents and communications among the parties to a complex transaction during a three-month period of intense activity. Plaintiff asks for these voluminous records within 10 days. That is clearly unreasonable.

### 5.  How far in advance the request is made

Plaintiff ignores the fifth factor too. Plaintiff purports to have acted with "alacrity," but the fifth factor is concerned with the degree to which the requested expedition would deviate from discovery in the ordinary course. *Fluke*, 2021 WL 566949, at *10 ("how far in advance of the typical discovery process the request was made"). Plaintiff says nothing about this issue, but the deviation here is substantial. In the ordinary course, Plaintiff would not be entitled to deliver even "early" document requests until 21 days after service of the complaint, and these would not be deemed served until the discovery conference. Fed. R. Civ. P. 26(d), 34(b)(2)(A). For other discovery, Plaintiff would need to await the Rule 26(f) conference, which the courts of this District do not typically require parties to hold until at least 30 days after the commencement of an action. Defendants would then have an additional 30 days to respond. Plaintiff's request for expedition would leapfrog the ordinary process by two months or more.

In any event, Plaintiff has *not* acted with alacrity. By January 9, 2025, Plaintiff had determined that, in his view, the Transaction violated the Anti-Takeover Statute. *Supra* at 5. Nothing prevented Plaintiff from filing his Complaint then. Plaintiff chose to wait for books and records, and even then dragged his feet. Nordstrom made the substantial majority of its production on February 28. On March 4, Plaintiff obtained a further trove of information via the Proxy. On March 14, Plaintiff received a small supplemental books and records production.

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 13

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Supplementing the January 9 Letter with citations to that information did not need to take until March 31. Nor did Plaintiff need another business week, until April 4, to file the Ex Parte Motion.

Delaware law—which, again, Plaintiff invokes—is not kind to parties who delay and then seek rapid-fire relief. Delaware courts deny requests for expedition on this basis. *E.g.*, *Oliver Press Partners, LLC v. Decker*, 2005 WL 3441364, at *1 (Del. Ch. Dec. 6, 2005) (denying request for expedited hearing where plaintiff waited eleven days, which was "nearly half of the time potentially available" to hear its claims).

## IV.   CONCLUSION

Plaintiff seeks to imperil the economic interests of the shareholders he purports to represent. In aid of that effort, Plaintiff asks the Court to place an enormous discovery burden on Defendants, to compensate for his own delays. The Court should deny Plaintiff's motion.

At the same time, in order to provide certainty desired by all parties, Nordstrom and the Independent Directors respectfully ask the Court to impose the schedule set forth on page 4.

NORDSTROM, INC. AND INDEPENDENT DIRECTORS'
OPPOSITION TO PLAINTIFF'S EX PARTE MOTION
(NO. C25-0568JHC) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

RESPECTFULLY SUBMITTED this 9th day of April, 2025.

I certify that this memorandum contains 4200 words, in compliance with the Local Civil Rules.

s/ *Sean C. Knowles*
Sean C. Knowles, WSBA No. 39893
Joseph E. Bringman, WSBA No. 15236
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
E-mail:  SKnowles@perkinscoie.com
E-mail:  JBringman@perkinscoie.com

Jim Ducayet (admitted pro hac vice)
**Sidley Austin LLP**
One South Dearborn
Chicago, IL  60603
Telephone: 312.853.7000
E-mail:  JDucayet@sidley.com

Charlotte K. Newell (admitted pro hac vice)
**Sidley Austin LLP**
787 Seventh Avenue
New York, NY  10019
Telephone:  212.839.5300
E-mail:  CNewell@sidley.com

s/ *Robin E. Wechkin*
Robin E. Wechkin, WSBA No. 24756
**Sidley Austin LLP**
8426 316th Pl SE
Issaquah, WA 98027-8767
Telephone:  415.439.1799
E-mail:  rwechkin@sidley.com

*Attorneys for Defendants Nordstrom, Inc., James L. Donald, Kirsten A. Green, Glenda G. McNeal, Amie Thuener O'Toole, Guy B. Persaud, Eric D. Sprunk, Bradley D. Tilden, Mark J. Tritton, and Atticus N. Tysen*

NORDSTROM, INC. AND INDEPENDENT DIRECTORS' OPPOSITION TO PLAINTIFF'S EX PARTE MOTION (NO. C25-0568JHC) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000